**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

CONTROL NETWORK
COMMUNICATIONS, INC.,

                           **Plaintiff,**

                                              **1:14-cv-1133
                                              (GLS/ATB)**

                         v.

**INTERNATIONAL
BROTHERHOOD OF
ELECTRICAL WORKERS,
LOCAL UNION NO. 236,**

                           **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Hodgson, Russ Law Firm | RICHARD L. WEISZ, ESQ. |
| 677 Broadway | |
| Suite 301 | |
| Albany, NY 12207 | |
| | |
| **FOR THE DEFENDANT:** | |
| Sherman, Dunn Law Firm | JONATHAN D. NEWMAN, ESQ. |
| 900 Seventh Street NW | LUCAS R. AUBREY, ESQ. |
| Suite 1000 | |
| Washington, DC 20001 | |
| | |
| Pozefsky, Bramley Law Firm | WILLIAM POZEFSKY, ESQ. |
| 90 State Street | |
| Suite 1405 | |
| Albany, NY 12207 | |

**Gary L. Sharpe
District Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Control Network Communications, Inc. (CNC) commenced this action against defendant International Brotherhood of Electrical Workers, Local Union No. 236 alleging breach of contract and fraud, and asserting federal question jurisdiction under the Labor Management Relations Act (LMRA).  (Am. Compl., Dkt. No. 12.)  Pending before the court is Local 236's motion to dismiss.  (Dkt. No. 16.)  For the foregoing reasons, the motion is granted.

## II. Background

### A. Facts

CNC is an employer-member of the National Electrical Contractors Association and a signatory of successive multi-employer collective bargaining agreements (CBA) with Local 236 since 2001. (Am. Compl. ¶¶ 1, 7-8, 63.)  All of the CBAs contained a "most favored nations" clause guaranteeing that signatories receive the same terms and conditions provided in any subsequent agreement to another party.  The clause in the most recent CBA states that:

2

> [t]he Union agrees that if during the life of this Agreement, it grants to any other Employer in the electrical industry on work covered by this Agreement, any better terms or conditions than those set forth in this Agreement, such better terms or conditions shall be made available to the Employer under this Agreement and the Union shall immediately notify the Employer of any such concessions.

(*Id.* ¶ 9 (citing CBA § 2.02).)

Adirondack Cabling, Inc. is an employer of electrical workers that also had an agreement with Local 236. (*Id.* ¶¶ 10, 16, 20.) Although Adirondack Cabling was not eligible, it had a single employer agreement with Local 236. (*Id.* ¶¶ 16-17.) Such agreements were reserved for private telephone and utility companies as well as facility maintenance crews that were directly employed by a business. (*Id.* ¶ 16.) Adirondack Cabling did not qualify as any of these entities. (*Id.* ¶ 17.)

In 2007, CNC asked Local 236 for a copy of its agreement with Adirondack Cabling. (*Id.* ¶ 73.) CNC suspected that Adirondack Cabling received more favorable terms from Local 236, which allowed it to outbid CNC on electrical projects. (*Id.*) Local 236 did not provide a copy of the agreement, but, instead, informed CNC that the CBA had the same contract terms as its agreement with Adirondack Cabling. (*Id.* ¶ 74.)

In September 2013, CNC again requested a copy of the agreement between Local 236 and Adirondack Cabling.  (*Id.* ¶ 75.)  This time Local 236 produced the agreement.  (*Id.* ¶ 76.)  The agreement contained terms CNC deemed more favorable than those in its CBA.  (*Id.* ¶ 12.)  For example, Local 236 agreed that Adirondack Cabling could provide commercially available 401(k) retirement and health care plans, could hire non-union summer help, could pay certain employees a lower rate than the prevailing rate, and did not need to provide benefits to union members for the first ninety days of employment.  (*Id.* ¶¶ 13, 15, 30, 32.)  Additionally, Local 236 agreed to indemnify Adirondack Cabling for liability arising from its agreement and included a no strike/no picket clause.  (*Id.* ¶¶ 34, 36.)  The multi-employer CBA that CNC signed did not include any of these terms.  (*Id.* ¶¶ 31, 33, 35-36.)

To resolve disputes between signatories and Local 236, the CBA sets forth a three-step grievance procedure.  (*Id.* ¶¶ 45-47.)  First, "[a]ll grievances or questions in dispute shall be adjusted by the duly authorized representative of each [party]."  (*Id.* ¶ 45 (citing CBA § 1.06).)  If the parties cannot resolve the matter within forty-eight hours, the issue will then be referred to the Labor Management Committee (LMC).  (*Id.*)

4

The LMC decides matters by a majority vote of the quorum. (*Id.* ¶ 46 (citing CBA § 1.07).) A quorum is four members of the LMC, which includes two members from each party. (*Id.*) LMC decisions are "final and binding" "[i]n absence of a deadlock." (*Id.*) If the LMC "fail[s] to agree or adjust any matter," the grievance will then be referred to the Council on Industrial Relations for the Electrical Contracting Industry whose decision is final and binding. (*Id.* ¶ 47 (citing CBA § 1.08).) Finally, the CBA provides "[w]hen any matter in dispute has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matters arose shall not be changed or abrogated until agreement has been reached or ruling has been made." (*Id.* ¶ 48 (citing CBA § 1.09).)

After receiving a copy of the Adirondack Cabling agreement, CNC filed a grievance against Local 236 alleging violations of the most favored nations clause. (*Id.* ¶ 42.) The grievance was sent to the LMC, and, on December 19, 2013, the LMC, which included members of Local 236, announced it was deadlocked. (*Id.* ¶¶ 49, 51.) In April 2014, the LMC required the parties to attend a hearing and ultimately denied CNC's grievance. (*Id.* ¶¶ 52-53.) The same three Local 236 members also sat

5

on the hearing panel. (*Id.* ¶ 53.)

**B.    Procedural History**

On September 17, 2014, CNC commenced this action against Local 236 alleging breach of contract and fraud, and asserting federal question jurisdiction under the LMRA. (Compl. ¶¶ 4, 45-67, Dkt. No. 1.) Local 236 moved to dismiss for failure to state a claim. (Dkt. No. 10.) CNC amended its complaint to elaborate on its allegations related to the grievance procedure in the CBA. (Am. Compl. ¶¶ 42-61.) Local 236 requested to withdraw its motion to dismiss the complaint, (Dkt. No. 14), which the court granted, (Dkt. No. 15). Local 236 then filed the now pending motion to dismiss CNC's amended complaint. (Dkt. No. 16.)

### III.    Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior opinion in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir. 2015).

### IV.    Discussion

A.  **Breach of Contract**

CNC alleges Local 236 violated the CBA's most favored nations clause by providing more desirable terms in its agreement with Adirondack Cabling. (Am. Compl. ¶¶ 37, 41.) Local 236 argues that the breach of contract claim must be dismissed because the LMC's denial of the grievance is final and binding on the parties. (Dkt. No. 16, Attach. 1 at 6-9.) CNC opposes and asserts the court may review its claim because it was denied due process during the dispute resolution process. (Dkt. No. 17 at 4-5.) Specifically, CNC contends the LMC's decision should be vacated because the committee was biased and failed to follow the grievance procedure. (*Id.* at 5.) Local 236 argues that CNC can only advance these arguments in a claim to vacate the LMC decision—not in a breach of contract claim, and it failed to timely do so. (Dkt. No. 16, Attach. 1 at 10-12.)

Section 301 of the LMRA authorizes suits by employers and labor unions in federal court to adjudicate violations of CBAs. *See* 29 U.S.C. § 185(a). Congress, however, expressed that "[f]inal adjustment by a method agreed upon by the parties is . . . the desirable method for settlement of grievance disputes arising over the application or

interpretation of an existing [CBA]." *Id.* § 173(d). Accordingly, parties must resort to the agreed upon grievance procedure within a CBA to resolve all claims subject to arbitration. *See United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 567-69 (1960); *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960). Courts will enforce final and binding grievance determinations and cannot "reweigh the merits of [a] grievance." *Gen. Drivers, Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963). Such determinations are final and binding if designated by the parties in the CBA. *See id.*

Here, the CBA provides that "[i]n absence of a deadlock, the [LMC's] decision shall be final and binding." (Am. Compl. ¶ 46 (citing CBA § 1.07).) The LMC deadlocked in December 2013, but the LMC directed a new hearing and then denied CNC's grievance. (*Id.* ¶¶ 49, 50, 52.) Nothing in the CBA suggests that the LMC cannot reconsider a deadlock. At this point, the LMC did not need to submit the grievance to the Council because the LMC made a determination. (*Id.* ¶ 47 (citing CBA § 1.08).) Because the LMC ultimately reached a decision, its denial became the final and binding determination. (*Id.* ¶ 46 (citing CBA § 1.07)); *see IBEW, Local 910 v. Roberts*, 992 F. Supp. 132 134-35 (N.D.N.Y. 1998)

8

(enforcing a decision by a joint union-employer grievance panel as final and binding). Having already submitted to the grievance procedure, CNC attempts to re-litigate its claim that Local 236 violated the most favored nations clause of the CBA. The LMC denied this grievance, and its decision is final and binding on the parties. *See Gen. Drivers*, 372 U.S. at 519.

CNC directs its arguments to the alleged bias of the LMR members and that the grievance procedures were not properly followed. (Dkt. No. 17 at 4-7.) These arguments are proper on a petition to vacate a labor arbitration award. *See Harry Hoffman Printing, Inc. v. Graphic Commc'n Int'l Union, Local 261*, 950 F.2d 95, 98 (2d Cir. 1991) (employer petitioning to vacate award arguing panel exceeded its authority); *Skyview Owners Corp. v. SEIU, Local 32BJ*, No. 04 Civ.4642, 2004 WL 2244223, at *4-5 (S.D.N.Y. Oct. 5, 2004) (employer petitioning to vacate award arguing the arbitrator was biased). Here, however, CNC failed to timely petition to vacate the LMR's decision. *See Local 802, Associated Musicians v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998) (applying the ninety-day statute of limitations from N.Y. C.P.L.R. 7511(a)); *Harry Hoffman Printing, Inc.*, 912 F.2d at 610-12 (same). CNC did not file its complaint

9

until September 17, 2014, which is at least 140 days after the LMC decision. (Compl.) CNC cannot now make such arguments under the veil of a breach of contract claim. *See, e.g.*, *Tecam Elec. M.V. Inc. v. Local Union 701 of IBEW*, No. 01 C 3333, 2001 WL 1338985, at *4 (N.D. Ill. Oct. 29, 2001) (holding procedural errors in the grievance process must be challenged on a timely motion to vacate and "cannot be the basis of [a] breach of contract claim"). Accordingly, CNC is bound by the final and binding LMR decision and is precluded from re-litigating its grievance as a breach of contract claim.

**B.   Fraud**

CNC also alleges that Local 236 fraudulently induced it into believing that the CBA had the same terms as the single employer agreement Local 236 signed with Adirondack Cabling. (Am. Compl. ¶¶ 74, 77-80.) CNC alleges that, as a result of the fraud, it had to make greater payments to Local 236 and lost contracts to Adirondack Cabling. (*Id.* ¶¶ 84-85.) Local 236 argues that CNC's state law fraud claim is preempted by the LMRA and must be dismissed. (Dkt. No. 16, Attach. 1 at 20-22.) Alternatively, Local 236 argues that CNC recasted its breach of contract claim as a fraud claim, and CNC has not sufficiently alleged

10

damages. (*Id.* at 23-25.)

Section 301 of the LMRA preempts state law claims that are "inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985); *see Wall v. Construction & Gen. Laborers' Union, Local 230*, 224 F.3d 168, 178 (2d Cir. 2000). This rule follows from Supreme Court holdings that federal substantive law governs the enforcement of CBAs, *see Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 451 (1957), and "uniformly . . . prevails[s] over inconsistent local rules," *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962).

However, not all state law claims which involve a provision of the CBA will be preempted. *See Allis-Chalmers Corp.*, 471 U.S. at 211; *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988). Preemption lies only if the court must interpret the CBA to resolve the claim. *See Lingle*, 486 U.S. at 413 (holding that a state retaliatory discharge claim was not preempted because the claim only required a fact-finder to consider the conduct and motivation of the employer and employee); *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 235 (2d Cir. 1997) (holding that a negligent misrepresentation claim was not preempted

because it was based on conduct of the parties and only required a reference to the CBA terms).

The preemption analysis begins with the elements of CNC's state fraud claim. *See Foy*, 127 F.3d at 233. To plead a claim of fraud, CNC must show: (1) a material misrepresentation of a fact made by Local 236; (2) knowledge of that fact's falsity; (3) an intent to induce reliance; (4) justifiable reliance by CNC; and (5) CNC's damages. *See Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 170 (2d Cir. 2015). Here, CNC alleges that Local 236 falsely informed CNC that the CBA contained the same terms as Local 236's agreement with Adirondack Cabling in order to collect more money from CNC. (Am Compl. ¶¶ 73-74, 78, 80.) As a result, CNC alleges it relied on Local 236's statement and suffered damages by paying more to Local 236 and by losing contracts to Adirondack Cabling. (*Id.* ¶¶ 77, 82, 84-85.)

Local 236 argues that the court must interpret the CBA to determine the element of damages. (Dkt. No. 16, Attach. 1 at 22.) Although "[t]he boundary between claims requiring 'interpretation' of a CBA and ones that merely require such an agreement to be 'consulted' is elusive," *Wynn v.*

12

*AC Rochester*, 273 F.3d 153, 158 (2d Cir. 2001), the court agrees that it must interpret the CBA to resolve CNC's fraud claim. A determination as to damages may require such interpretation, but the court primarily finds it would have to interpret the CBA to determine whether Local 236 made a material misrepresentation. This analysis demands more than a "simple reference to the face of the CBA" but involves the interpretation of the most favored nations clause and a comparison of two labor agreements. *Cf. id.*; *Foy*, 127 F.3d at 235.

CNC alleges fraud premised on Local 236's purported violation of the most favored nations clause. (Am. Compl. ¶ 9 (citing CBA § 2.02)); *see Allis-Chalmers Corp.*, 471 U.S. at 215 (noting that preempted state tort arose from obligation established by CBA). Whether Local 236 made such misrepresentation calls for the court to interpret whether Local 236 violated its duty under the clause. To establish the violation, the court must compare the terms of the Adirondack Cabling agreement with the CBA. The court then must determine whether such terms are in fact more favorable. If Local 236 did not provide more favorable terms to Adirondack Cabling, then it would not have made a material misrepresentation to CNC, and the fraud claim must fail.

13

The court's analysis here requires a closer look at the CBA than in *Wynn* or *Foy*. In both cases, the plaintiffs alleged their employers made false representations about benefits they were entitled to in a layoff. *See Wynn*, 273 F.3d at 158; *Foy*, 127 F.3d at 231. To evaluate whether the element of misrepresentation required interpretation of the CBAs, the courts looked to the CBAs' terms. *Wynn*, 273 F.3d at 158; *Foy*, 127 F.3d at 233-34. In both cases, the plain language demonstrated that the CBAs either did or did not provide for the benefits. *Wynn*, 273 F.3d at 158; *Foy*, 127 F.3d at 233-34. As such, the courts held they merely consulted rather than interpreted the CBAs. *Wynn*, 273 F.3d at 158; *Foy*, 127 F.3d at 233-34. Here, CNC's fraud claim relates to whether Local 236 misrepresented that it violated its duty under the CBA. Unlike *Wynn* or *Foy,* it is not apparent on the face of the CBA whether Local 236 violated that duty. Rather, the court must look to the terms of another labor agreement, compare it with the CBA, and then determine whether Local 236 provided more favorable terms to another party. Accordingly, CNC's fraud claim is inextricably intertwined with the CBA and preempted by federal labor law. *See Allis-Chalmers Corp.*, 471 U.S. at 213. As such, CNC's fraud claim is dismissed.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Local 236's motion to dismiss (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that CNC's amended complaint (Dkt. No. 12) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close the case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

November 5, 2015
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge